# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

SUZETTE WELTON

          Petitioner,

v.

MIKE GILLIGAN,

          Respondent.

3:15-cv-00149-SLG-DMS

**FINAL REPORT AND RECOMMENDATION REGARDING PETITIONER'S MOTION TO STAY AND ABEY; RESPONDENT'S MOTION TO DISMISS [DOCS. 28; 29]**

## I.    MOTIONS PRESENTED

After her first federal habeas petition was dismissed for failure to exhaust her claims, *Welton v. Marshall*, No. 3:12-CV-0137 TMB, 2014 WL 309788 (D. Alaska Jan. 27, 2014), Suzette Welton (Welton) filed a second *pro se* Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, on August 25, 2015. (Doc. 1). On December 6, 2016, Welton, now assisted by appointed counsel, filed her First Amended Petition for Writ of Habeas Corpus, asserting three claims of ineffective assistance of trial counsel. (Doc. 27 at 20-30). In her amended petition, Welton concedes that two of her claims of ineffective assistance of counsel are presently unexhausted because they are being litigated in her still ongoing second, state postconviction proceedings. (*Id*. at 29-30). She asserts that her first claim—the subject of her first federal habeas petition—has been properly exhausted, and, even

if it is not, there is cause and prejudice to bypass the exhaustion requirement. (*Id*. at 21-29). That is, Welton asserts that she has filed a mixed petition.

Welton then filed a motion to stay her petition pursuant to *Rhines v. Weber*, 544 U.S. 269, 276-77 (2005). The State of Alaska opposes Welton's motion for stay, arguing that her first and third claims have been procedurally defaulted, and she has failed to demonstrate that she is entitled to a stay of her remaining unexhausted claim under *Rhines*. (Doc. 31).

The State also filed a Motion to Dismiss First Amended Petition, again asserting that Welton's first and third claims have been procedurally defaulted, and contending that she has failed to demonstrate cause-and-prejudice to bypass the exhaustion requirement with respect to her second claim. (Doc. 29). Welton opposes the State's motion to dismiss, arguing that she has properly exhausted her first claim, or that there is cause and prejudice to bypass the exhaustion requirement. (Doc. 32). Welton however concedes that her third claim has been abandoned by her counsel in her ongoing state postconviction proceedings and should be deleted from her federal habeas petition. (Doc. 32 at 2). In a reply brief, the State reasserts its argument that Welton's first claim has been procedurally defaulted and there are no grounds to excuse the exhaustion requirement. (Doc. 33). The parties have fully briefed the issues, and the motions are now ripe for this Court's consideration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2002, Welton was convicted in Alaska state court of first-degree murder, second-degree murder, attempted first-degree murder, and first-degree arson. (*See* Transcript Vol. 8 at 5158-59, hereinafter Tr.).[1] Superior Court Judge Milton M. Souter sentenced Welton to 99 years in prison. (*See* Tr. Vol. 8 at 5226). Welton unsuccessfully appealed her conviction and the dismissal of her state postconviction petition. While the appeal of her state postconviction petition was pending, Welton filed a second, state postconviction petition.

While her second, state postconviction proceedings were pending, Welton filed her first petition for federal relief pursuant to § 2254. *See Welton v. Marshall* (hereinafter *Welton III*), No. 3:12-CV-0137 TMB, 2014 WL 309788 (D. Alaska Jan. 27, 2014). On January 27, 2014, the District Court adopted this Court's Report and Recommendation and dismissed without prejudice Welton's petition because it contained only unexhausted claims. *Id.*

### A. Trial and Direct Appeal

Welton's convictions arose out of a fire that burned her Wasilla home where she lived with her three children—six-year-old daughter, Bree; fourteen-year-old, Samuel; and sixteen-year-old, Jeremiah. *Welton v. State* (hereinafter *Welton I*), 2004 WL 1837692, *1 (Alaska App. 2004). On the night of September 15, 2000, Welton served Jeremiah and Samuel Pepsi and fruit drinks that tasted "funny" to

---

[1] The State filed the trial transcripts at Docs. 29-1 through 29-8.

them.  *Id.* at **1-2.  The drinks made the brothers tired and they went to bed

upstairs.  *Id.* at *2.  Bree slept downstairs with Welton.  *Id.* at *1.  Sometime that

night, Jeremiah awoke to find the house on fire.  *Id.* at *1.  Because the cranks to

his windows were missing, Jeremiah broke a window and jumped from the second

story to the ground; he sustained cuts to his hands and feet from the fall.  *Id.* at *1.

Samuel died in the fire from smoke inhalation.  *Id.* at *1.  Bree was carried to safety

by Welton.  *Id.* at *1.

The ensuing investigation pointed to Welton as an arsonist who started the

fire.  Responding firefighters and investigators concluded that the fire had been

intentionally set on the second floor.  *Welton v. State*, 2004 WL 1837692, at *1.[2]

Police discovered that Welton's grocery-store club card had been used two days

before the fire to buy a 2.5 gallon gas can and Sleepinol, which is a non-prescription

sleeping aid containing diphenhydramine.  *Id.* at *2.  The club card was also used to

purchase Pepsi and fruit drinks on the day of the fire.  *Id.* at *2.  An autopsy of

Samuel's body revealed that he had high levels of diphenhydramine in his system,

and Jeremiah's shirt contained traces of diphenhydramine, which likely occurred

from perspiring while wearing the shirt.  *Id.* at *2.  The bottles Welton used to serve

the drinks to Samuel and Jeremiah were recovered and tested positive for

diphenhydramine.  *Id.* at *2.  Three months prior to the fire, Welton purchased

---

[2]  The responding firefighters noted that the fire continued to reignite when water was applied to the
flames and there was a strong odor of "flammable or combustible fuel" throughout the second floor.
*Id.* at *1.  Welton's next-door neighbor also told investigators that he awoke around 4:20 a.m. to an
"explosion that shook his entire house."  *Id.* at *1.

whole-life insurance policies for Jeremiah and Samuel and named herself as the beneficiary of both policies. *Id*. at *2. Welton was subsequently indicted by a grand jury. *Id*. at *1.

The Court appointed attorneys Gregory Heath and George Davenport to represent Welton. *Welton v. State* (hereinafter *Welton II*), No. A-10237, 2011 WL 2151850, at *1 (Alaska Ct. App. May 25, 2011). At trial, Welton's attorneys presented inconsistent defenses: (1) that the fire was an unexplained tragedy; (2) that Jeremiah or Samuel had intentionally or accidentally started the fire; and (3) that the state had failed to prove its case against Welton beyond a reasonable doubt. (Doc. 29-13 at 18).

## 1. Testimony Regarding the Cause and Nature of the Fire

Among other evidence, the State presented the testimony of several firefighters and fire investigators, all of whom agreed that the fire was caused by arson. *Welton I*, 2004 WL 1837692, at *1. These witnesses based their opinion on a number of observations made during the fire and subsequent investigation. For example, the firefighters and investigators testified that they could smell gasoline or some other chemical accelerant during the fire. *Id*. The firefighters believed an accelerant had been used because the fire would reignite when they attempted to put it out. *Id*.

Deputy Fire Marshal Carol Olson testified that she was able to rule out the possibility that the fire was caused by electronic or mechanical problems. *Id*. Among other findings, she concluded that the burn patterns throughout the home—which

included "burn throughs" in the flooring—resulted from the use of accelerants. (Tr. Vol. 3 at 1193-97, 1135-38, 11450).

To rebut this testimony, Welton called Dr. Vytenis Babrauskas (Babrauskas), a Ph.D. fire scientist, as an expert witness. (Tr. Vol. 6 at 3717-2973).[3] Dr. Babrauskas testified that he obtained a bachelor's degree in physics from Swarthmore College, and both a master's degree in structural engineering and a Ph.D. in fire protection engineering from the University of California, Berkeley. (*Id.* at 3719). After obtaining his Ph.D., he worked for the National Bureau of Standards, researching building codes, fire dynamics, the toxicology of fire and structural fire resistance. (*Id.* at 3721-22). During the course of his career, he has served as an adjunct professor at two universities, where he gave lectures on fire dynamics to engineering graduate students. (*Id.* at 3722). In addition to publishing about fire science textbooks, Dr. Babrauskas invented the furniture calorimeter, the first device ever created that could quantify the burning of furniture, for which he received an award from the magazine *Research and Development*. (Tr. Vol. 6 at 3723-26). Moreover, he developed the first computer program in the United States that could model fires, which was still in use at the time of Welton's trial. (*Id.* at 3729).

Dr. Babrauskas testified that he currently operated a consulting firm specializing in product safety for building manufacturers and forensic work in fire

---

[3] The portions of the trial transcript containing Dr. Babrauskas' testimony are found on pages 3716-3973 of Tr. Vol. 6, filed at Dockets 29-5 and 29-6.

cases. (*Id*. at 3718). While working as a consultant, he had testified as a fire science expert at approximately two dozen civil depositions, in two civil cases and at a hearing in an arson-murder case. (*Id*. at 3742).

However, during the State's voir dire, Dr. Babrauskas acknowledged that he had never conducted a fire investigation, and was not a fire or arson investigator. (*Id*. at 3745-47). He explained that he had only visited a few dozen fire scenes in person, and had never been observed a structure fire outside of a laboratory. (*Id*. at 3747-48). However, he later clarified that, in his work as a consultant, he routinely offered expert opinions on the cause and origin of fires. (*Id*. at 3750).

Over the prosecutor's objection, Judge Souter found that Dr. Babrauskas was qualified to testify as an expert in fire science **and the causation of fires**. (*Id*. at 3753 ("It's clear to me this man does qualify to testify in the field of fire safety science and forensics, including causation of fires, so he's recognized as an expert witness.")).

During the course of his testimony, Dr. Babrauskas argued that the State's fire investigators had concluded that the fire was caused by arson on the basis of "bad science." (*Id*. at 3775). He explained that the holes and burn patterns observed in the house's floor were consistent with accidental fires, and did not necessarily indicate the use of accelerants. (*Id*. at 3780-81). He opined that a liquid accelerant could not itself have caused the damage observed by the fire investigators, and explained that fires doused with water will naturally reignite once the burning wood has reached a temperature of 550 degrees Fahrenheit. (*Id*. at 3785, 3790). Dr.

Babrauskas ultimately concluded that there was insufficient evidence to determine the point of origin of the fire. (Tr. Vol. 6 at 3926-27).

### 2. Conviction and Direct Appeal

The jury ultimately convicted Welton on all counts, and Judge Souter sentenced her to 99 years in prison. *Welton III,* 2014 WL 309788, at *2.

Welton appealed to the Alaska Court of Appeals, arguing that there was insufficient evidence of her guilt to support her conviction. *Welton I, 2004 WL 1837692*, at *3. The Court of Appeals affirmed Welton's conviction, reasoning that a review of the record in the light most favorable to the State revealed sufficient evidence for the jury to conclude beyond a reasonable doubt that Welton committed all of the crimes of which she was convicted. *Id*. at *4.

### B. First State Postconviction Relief Proceeding

Welton then filed a state petition for postconviction relief in state court, claiming that she received ineffective assistance from trial counsel Heath and Davenport. (Doc. 29-13 at 1-2). "Welton claimed, among other things, that Heath and Davenport's failure to confront Jeremiah on cross-examination with his prior statement to an Alaska State Trooper that he had used sleeping pills fell below the minimum level of professional conduct. *Welton III*, 2014 WL 309788, at *3. Judge Eric Smith dismissed Welton's petition, concluding that, although Heath apparently overlooked Jeremey's prior statement, Heath's overall performance was effective.[4]

---

[4] A detailed summary of Judge Smith's ruling can be found in this Court's Report and Recommendation Regarding Respondent's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus in 3:12-cv-00167-TMB-DMS. *Welton III*, 2014 WL 309788, at **3-5.

(Doc. 29-13 at 27). Welton appealed Judge's Smith's decision to the Alaska Court of Appeals, which affirmed, concluding that Judge Smith's decision was supported by the record. *Welton II*, 2011 WL 2151850, at *12. Welton then unsuccessfully petitioned Alaska Supreme Court for discretionary review. *Welton III*, 2014 WL 309788, at *5.

### C. Second State Postconviction Relief Proceedings

In February 2010, Welton filed a second petition for postconviction relief. (Doc. 29-21). The state court appointed counsel, who filed an amended petition for postconviction relief in April 2013, claiming that Welton's first state postconviction attorney was ineffective under *Grinols v. State*, 74 P.3d 889 (Alaska 2003).[5] (Doc. 29-22). In her amended petition, Welton claimed that her first postconviction attorney, Michael Smith (Smith), was ineffective because he did not argue that that Welton's trial counsel were ineffective for: (1) failing to consult with a fire cause-and-origin expert; (2) failing to obtain unedited footage from a television documentary about Welton's case; and (3) failing to impeach Welton's son, Jeremiah, about life insurance money he expected to receive, and the State's assistance in helping him make his life insurance claim. (Doc. 29-22 at 6-8).

The State then filed a motion to dismiss Welton's petition. (*See* Doc. 29-23). Judge Vanessa White granted the State's motion and dismissed Welton's petition, concluding that, although Welton's petition was timely, it failed to state a *prima*

---

[5] In *Grinols*, the Alaska Supreme Court held that criminal defendants have a right to effective counsel in their first application for postconviction relief, and can challenge the effectiveness of their postconviction attorney in a second petition for postconviction relief. 74 P.3d at 896.

*facie* case that Smith was ineffective. (*Id*. at 9-27). Judge White concluded that the claim that Smith ineffectively failed to allege that Heath and Davenport were ineffective for failing to hire an expert in the cause and origin of fires was without merit because the defense's fire "expert testified directly on the issue of the cause of the fire, and that he opined that it was not an incendiary fire." (*Id*. at 22-24).

Welton then appealed Judge White's dismissal of her second postconviction petition to the Alaska Court of Appeals. (Doc. 29-25). In her appeal, Welton argued that Judge White erred in dismissing her claim regarding her trial counsel's failure to hire a cause-and-original fire expert. (*Id*. at 44-54). Additionally, Welton claimed actual innocence under the Alaska Constitution's Due Process clause, and ineffective assistance of counsel under the federal and Alaska law, arguing that the State's fire investigators presented false, unscientific testimony.[6] (*Id*. at 53-58).

The parties have completed their appellate briefing, (Docs. 29-25; 29-26; 29-7), and Welton's appeal has been taken under advisement by the Alaska Court of Appeals, *see* Alaska Appellate Case Management System, *Suzette Welton v. State of Alaska*, No. A12010, http://www.appellate.courts.state.ak.us/frames1.asp?Bookmark=A12010, ("Case Status: Ripe for Decision").

### D. Welton's First Federal Habeas Petition

On June 26, 2012, Welton filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. *Welton III*, No. 3:12-CV-0137 TMB, 2014 WL 309788,

---

[6] In this regard, Welton claims that the science underlying the State's expert testimony has been debunked by shifts in forensic science that occurred after her trial. (*Id*.).

at *1 (D. Alaska Jan. 27, 2014). The State moved to dismiss the petition for failure to exhaust. *Id.* Welton agreed that three of her claims were unexhausted, but argued that she had properly exhausted one claim: that her trial counsel were ineffective for failing to cross-examine Jeremiah Welton about his prior statement that he had used sleeping pills. *Id.* at *1, *6. Welton requested that her petition be stayed until the state courts ruled on her unexhausted claims. *Id.* at *1.

The State moved to dismiss Welton's petition, asserting that all of Welton's claims were unexhausted. *Id.* at *1. This Court concluded that Welton's claim that her trial counsel failed to effectively cross-examine Jeremiah Welton was not properly exhausted because in her petition for discretionary review to the Alaska Supreme Court she failed to allege counsel violated the federal standard for ineffective counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Id.* at **7-11. On January 27, 2014, the District Court adopted this Court's Report and Recommendation, and dismissed Welton's petition without prejudice because it contained only unexhausted claims. *Id.* at *1.

### E. Welton's Original Applications for Relief Under Alaska Appellate Rule 404

On November 18, 2014, Welton filed an original application for relief with the Alaska Court of Appeals pursuant to Alaska Rule of Appellate Procedure 404.[7] (Doc. 29-28). In her original application, Welton reasserted her claim that her trial

---

[7] Pursuant to Alaska Rule of Appellate Procedure 404, original applications for relief can be filed with an appellate court "whenever relief is not available from any other court and cannot be obtained through the process of appeal, petition for review, or petition for hearing. Granting of the application is not a matter of right but of sound discretion sparingly exercised."

counsel was ineffective for failing to cross-examine Jeremiah Welton about his prior use of sleeping pills. (*Id.*). Citing to *Strickland v. Washington* and a number of other federal decisions construing the ineffective assistance of counsel standard, Welton argued that the trial court erroneously based its decision on false testimony given by attorney Gregory Heath, which was directly contradicted by the record. (*Id.* at 3-5).

Marilyn May, Clerk of Alaska's Appellate Courts, refused the original application, stating that Alaska Appellate Rule 404 "is not a vehicle to allow an untimely appeal." (Doc. 29-29). Welton then moved for judicial review of May's rejection of her application. (*See* Doc. 29-30 at 2).

On January 9, 2015, Alaska Court of Appeals Judge Mannheimer issued an order affirming May's rejection, concluding that Welton's original application was an impermissible attempt to reargue a claim litigated in her first post-conviction proceedings.[8] (Doc. 29-30; Doc. 29-31).

Welton then sought reconsideration of Judge Mannheimer's order from the entire Alaska Court of Appeals. (Doc. 29-31 at 2). On February 6, 2015, the three judges of the Alaska Court of Appeals once again affirmed May's rejection of Welton's original application, concluding that Rule 404 was an inappropriate vehicle for re-litigating a claim brought in her first application for post-conviction relief. (Doc. 29-31).

---

[8] Deputy Clerk Mindi Johnson issued the order at Judge Mannheimer's direction, but forgot to include language clarifying that Judge Mannheimer had in fact authorized the order. (*See* Doc. 29-31 at 2).

Welton then petitioned the Alaska Supreme Court for review of the Alaska Court of Appeals' rejection of her original application. (Doc. 29-32). In her petition, Welton requested that the Supreme Court remand her original application for relief to the Alaska Court of Appeals to reassess her ineffective assistance claim both under the Alaska and federal constitution. (*Id*. at 2). The Alaska Supreme Court denied Welton's petition on July 9, 2015. (Doc. 29-33) ("The petition for hearing is **DENIED**.") (emphasis original).

## F. Welton's Second Federal Habeas Petition

### 1. The Pending Petition

On August 25, 2015, Welton filed a second petition for federal habeas relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Because Welton's first federal habeas petition was dismissed for failure to exhaust, the District Court found that the petition was a permissible, second petition, and appointed Welton counsel.[9] (Doc. 3 at 1-2, 10). After concluding that Welton's *pro se* petition contained unexhausted claims, the District Court directed Welton's counsel to file an amended petition containing fully exhausted claims or to file a notice of voluntary dismissal by December 4, 2015. (Doc. 3 at 10-11). After obtaining several extensions of time to file an amended petition, Welton filed her First Amended Petition for Writ of Habeas Corpus. (Doc. 27).

---

[9] Pursuant to 28 U.S.C. § 2244, successive § 2254 petitions must be dismissed. However, when a district court dismisses a habeas petition under the total exhaustion rule without an adjudication on the merits, a subsequent petition is not considered successive for the purposes of § 2244. *Slack v. McDaniel*, 529 U.S. 473, 489 (2000).

In her amended petition, Welton asserts three claims that her trial counsel were ineffective for: (Claim 1) for failing to cross-examine her son, Jeremiah Welton, about his prior use of sleeping pills; (Claim 2) failing to hire/consult a cause-and-origin fire expert; and (Claim 3) failing to cross-examine Welton about assistance he received from State investigators during an attempt to collect life insurance money. (Doc. 26 at 19-29). Welton asserts that she properly exhausted Claim 1 by filing original applications for relief with the Alaska Court of Appeals and the Alaska Supreme Court pursuant to Alaska Rules of Appellate Procedure 404 and 520. (Doc. 26 at 15-18, 22-26). Although the appellate courts rejected her petition on procedural grounds, she argues that her claim is not procedurally defaulted under federal habeas law because the asserted state procedural bar is not adequate and independent. (Doc. 26 at 26). In the alternative, Welton argues that there is cause and prejudice sufficient to bypass AEDPA's exhaustion requirement under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 26 at 27-29).

She however concedes that Claims 2 and 3 are unexhausted. (Doc. 26 at 29). She has since agreed to strike Claim 3 from the instant petition because it has been abandoned by her appellate counsel in her second state postconviction case. (Doc. 32 at 2).

### 2. Welton's Motion to Stay and Abey

Welton has filed a Motion to Stay and Abey her second federal habeas petition, arguing she is eligible to stay her petition under *Rhines v. Weber*, 544 U.S. 269, 275 (2005). (Doc. 28). She argues that she satisfies the *Rhines* criteria because

Claim 2 is potentially meritorious, and she has not engaged in dilatory tactics. (*Id.* at 5-6). Finally, she argues that there is good cause for her failure to exhaust because Smith, her first state postconviction attorney, was ineffective. (*Id.* at 6). Specifically, Welton alleges that Smith should have claimed that her trial counsel were ineffective for failing to consult a cause-and-origin fire expert in her first state postconviction petition. (*Id.*).

The State opposes, arguing that all of Welton's claims are unexhausted, and her petition should be dismissed. (Doc. 31 at 1-2). In its opposition, the State argues that Welton is not entitled to a stay under *Rhines*. (Doc. 31 at 8-18).

### 3. The State's Motion to Dismiss

The State then filed a Motion to Dismiss, arguing again that all of Welton's claims are unexhausted or have been procedurally defaulted. (Doc. 29). Welton opposes, arguing that: (1) there is cause and prejudice to excuse any failure to exhaust Claim 1; and (2) that Claim 1—the subject of her first federal habeas petition, which was previously dismissed as unexhausted—became exhausted when she filed applications for original relief with the Alaska appellate courts. (Doc. 32 at 2-12). In its reply, the State opposes both of Welton's arguments. (Doc. 33).

## III. LEGAL AUTHORITY

### A. The Total Exhaustion Rule

The exhaustion doctrine, first announced in *Ex Parte Royall*, 171 U.S. 241, 6 S. Ct. 734 (1886), is codified in 28 U.S.C. § 2254(b)(1)(A). It reads, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .

Section 2254(b)(1)(A).

The exhaustion requirement is a rule of comity that "reduces friction between the state and federal court system by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999) (internal quotation marks, brackets and citations omitted).

In *Rose v. Lundy*, the Supreme Court established the total exhaustion rule, which generally requires federal courts to dismiss mixed petitions containing both exhausted and unexhausted claims. 455 U.S. 509, 522 (1982). The *Rose* opinion concluded that a "rigorously enforced total exhaustion rule" would further the goals of the exhaustion doctrine by encouraging state prisoners to fully exhaust their claims and promote judicial. *See id.* at 518-20; *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991) ("The requirement of exhaustion rests upon the principles of comity and judicial economy."). The Court reasoned that the total exhaustion rule's requirement that the petitioner present their claims in a single habeas petition would promote judicial economy by reducing piecemeal litigation. *Lundy*, 455 U.S. at 520 ("Rather than increasing the burden on federal courts, strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their

claims in state court and to present the federal court with a single habeas petition.").

However, under Ninth Circuit case law, before dismissing a mixed petition, the District Court must first give the petitioner the option to dismiss her unexhausted claims and proceed to the merits of any remaining exhausted claims. *See Dixon v. Baker*, 847 F.3d 714, 719 (9th Cir. 2017) ("[W]e have repeatedly warned the district courts that they **may not dismiss a mixed petition without giving the petitioner the opportunity to delete the unexhausted claims**.") (internal citation and quotation marks omitted); *but see Rhines v. Weber*, 544 U.S. 269, 278 (2005) ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims **if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief**.") (emphasis added).

## B. The *Rhines* Stay

After *Rose v. Lundy* was decided, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which imposed a one-year statute of limitations for filing habeas petitions. 28 U.S.C. § 2244(d). "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275 (2005). Because the filing of a federal

habeas petition does not toll the statute of limitations, a petitioner who files close to the end of the one-year statute of limitations will likely lose their opportunity for federal review if the district court dismisses their petition as mixed. *Id.* "Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion" and thus risk of having the statute of limitations expire before the district court dismisses his mixed petitioner under *Lundy*. *Id.*

In light of these concerns, the Supreme Court held in *Rhines v. Weber* that a petitioner who has filed a mixed petition can obtain a stay of their federal habeas proceedings under limited circumstances. 544 U.S. at 278. The Court concluded that it is an abuse of discretion for a district court to deny a stay of a mixed petition if the petitioner can demonstrate: (1) good cause for failure to exhaust; (2) that the unexhausted claims are potentially meritorious; and (3) that there is no indication the petitioner has engaged in intentional, dilatory tactics.[10] *Id.*

## III.   ANALYSIS

### A. Welton's Petition is Mixed

The parties have provided the Court with thorough briefing on whether Welton's first claim (Claim 1)—that her trial counsel were ineffective for failing to adequately cross-examine Jeremiah Welton—has been procedurally defaulted by the state courts on adequate or independent state grounds, or whether Welton is entitled to bypass any procedural default pursuant to *Martinez v. Ryan*, 566 U.S. 1

---

[10] In *Mena v. Long*, the Ninth Circuit expanded the *Rhines* stay to cases where the state prisoner has filed a petition containing only unexhausted claims. 813 F.3d 907, 912 (9th Cir. 2016).

(2012). This Court need not decide whether Claim 1 has been procedurally defaulted because Welton's petition is mixed, and must be dismissed or stayed unless she elects to delete her unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005)

In January 2014, the District Court found that Welton had failed to exhaust the federal questions raised by Claim 1 during her first state postconviction proceedings. *Welton III*, 2014 WL 309788 (D. Alaska Jan. 27, 2014). Welton had presented the Alaska Court of Appeals with a federal claim, contending that her trial counsel were ineffective under the Sixth Amendment for failing to cross-examine Jeremiah Welton about his prior use of sleeping pills. *See Suzette Welton, Appellant, v. State of Alaska*, Appellee, 2009 WL 6388592 (Alaska App.), 33. However, Welton abandoned the federal nature of Claim 1 and failed to cite to the Sixth Amendment or *Strickland v. Washington,* 466 U.S. 668 (1984) when she petitioned the Alaska Supreme Court for discretionary review. *See Welton III*, 2014 WL 309788, *7. This led to the 2014 dismissal of her first federal claim. *See id*.

Claim 1 subsequently became exhausted when Welton petitioned the Alaska Supreme Court for review of the Alaska Court of Appeals' rejection of her petition for original relief, arguing that the Alaska Court of Appeals should be ordered to once again consider Claim 1 under the Sixth Amendment and the federal *Strickland* standard. (Doc. 29-32 at 2). Welton's first claim has been exhausted because there are no longer any state remedies available to her. *See Coleman v. Thompson*, 501

U.S. 722, 732 (1991) holding modified by *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

Because the parties agree that Welton's second claim (Claim 2)—the subject of her pending appeal before the Alaska Court of Appeals—is unexhausted, Welton's petition is mixed. It would be premature to find that Welton's first claim has been procedurally defaulted, under the total exhaustion doctrine, because federal courts confronted with a petition containing unexhausted claims must either dismiss or stay the entire petition, unless the petitioner elects to delete her unexhausted claims.[11] *See Rhines v. Weber*, 544 U.S. 269, 278 (2005); *see also Moore v. Schoeman*, 288 F.3d 1231, 1235–36 (10th Cir.2002) (holding that it is impermissible for a federal habeas court to adopt a hybrid approach, dismissing some claims on the merits, and dismissing others to be exhausted in state court); *see also Brown v. Walker*, 293 F. Supp. 2d 1184, 1196 (D. Nev. 2003) (citing *Moore* with approval); § 9C:73. Preserve exhaustion defense and seek dismissal on the merits, Federal Habeas Manual ("The authority to deny refers to denials of the 'application' and not individual claims.").

## B. Welton Has Failed to Demonstrate that She Is Entitled to a *Rhines* Stay

Having determined that the Welton has presented a mixed petition, and a ruling on whether Welton's first claim has been procedurally defaulted would be

---

[11] A ruling on the State's procedural default arguments would amount to a piecemeal resolution of Welton's claims; the sort of result of forbidden by the total exhaustion rule requirement that the petitioner "present the federal court with a single habeas petition." *Lundy*, 455 U.S. at 520.

premature under the total exhaustion rule, the Court must now determine whether Welton is eligible for a *Rhines* stay. For the reasons explained below, this Court finds that Welton is not entitled to a stay of her second claim under *Rhines* because she has failed to establish good cause for her prior failure to exhaust.

### 1. Welton Has Failed to Demonstrate that Her First State Postconviction Attorney's Alleged Ineffectiveness Amounts to Good Cause under *Rhines*

Under *Rhines v. Weber*, a petitioner can obtain a stay of their federal habeas petition if she can demonstrate: (1) good cause for her failure to exhaust; (2) that her unexhausted claims are potentially meritorious; and (3) there is no indication that she has engaged in intentional dilatory tactics. 544 U.S. 269, 278 (2005).

To establish good cause for a prior failure to exhaust under *Rhines*, a federal habeas petitioner must present "a reasonable excuse, supported by evidence[.]" *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). Good cause does not require a showing of "extraordinary circumstances." *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017). Pertinent to this case, a state postconviction attorney's ineffective assistance of counsel can constitute good cause for a failure to exhaust. *Blake*, 745 F.3d at 982-83.

To prove good cause under *Rhines*, the petitioner need only show that her postconviction attorney performed ineffectively under the deficiency prong of the *Strickland v. Washington* test for ineffective assistance of counsel.[12] *Cf.* Detrich v.

---

[12] Under *Strickland v. Washington*, a petitioner claiming ineffective assistance of counsel must demonstrate that: (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). However, a petitioner arguing good cause based on

Ryan, 740 F.3d 1237, 1245–46 (9th Cir. 2013) ("We conclude, for the narrow purpose of satisfying the second *Martinez* requirement to establish 'cause,' that a prisoner need show only that his PCR counsel performed in a deficient manner. A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first Martinez requirement.) Under *Strickland*'s deficiency prong, courts ask whether defense "counsel's representation fell below an objective standard of reasonableness." *Ayala v. Chappell*, 829 F.3d 1081, 1096 (9th Cir. 2016) (internal citation and quotation marks omitted).

"In evaluating the attorney's performance a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal citation and quotation marks omitted). "The choice of what type of expert to use is one of trial strategy and deserves 'a heavy measure of deference.'" *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002).

Here Welton argues that Smith, her first postconviction attorney, was ineffective for failing to allege that her trial counsel committed ineffective assistance of counsel by failing to consult an expert in the cause-and-origin of fires. Welton alleges that Dr. Babrauskas was not an expert qualified to testify about the cause and origin of the fire, and claims that he was "not permitted to offer his

the ineffective assistance of counsel under *Rhines* need only satisfy the good cause standard established in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Blake*, 745 F.3d at 984. The *Martinez* good-cause standard, in turn, requires a petitioner to satisfy the deficiency, but not the prejudice prong, of the *Strickland* test. *Detrich*, 740 F.3d at 1245–46.

opinion as to the origin of the fire." (Doc. 28 at 5). To support her claim, Welton has

filed an affidavit signed by Smith, in which he admits that it should have been

apparent to him that Welton's trial counsel were ineffective for failing to call an

expert in the cause and origin of fires. (Doc. 28-1 at 2).

Welton's assertions, and Smith's admission of incompetence,[13] are clearly

contradicted by the trial record. During the State's voir dire of Dr. Babrauskas, the

prosecutor questioned Babrauskas' credentials, asking whether he had ever made a

"full cause-and-origin determination[.]" (Tr. Vol. 6 at 3747). Dr. Babrauskas initially

responded that he had not done so, but then clarified on re-direct that in his work

as a consultant he had "routinely" offered expert opinions as to the cause and origin

of fires. (*Id.* at 3749-50). The prosecutor then argued that Dr. Babrauskas was not

qualified to make "actual cause-and-origin determinations." (*Id.* at 3752). Judge

Souter squarely rejected the prosecutor's objection.

> THE COURT: Both sides had two whacks at that rather thoroughly.
> It's clear to me this man does qualify to testify in the field of fire safety
> and forensics, including causation of fires, so he's recognized as an
> expert witness.

(*Id.* at 3753).

---

[13] An attorney's bare assertion of incompetence is not controlling under *Strickland*. *See, e.g., Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004) (trial counsel's "about-face on the competency issue strongly suggests a willingness to 'fall on the sword' . . . The motive is transparent, if not misguided."); *Winn v. Lamarque*, No. 203CV2347JAMKJNP, 2010 WL 2303304, at *16 (E.D. Cal. June 7, 2010), subsequently aff'd, 499 F. App'x 699 (9th Cir. 2012) ("Self-proclaimed inadequacies on the part of trial counsel in aid of a client on appeal are not persuasive.") (quoting *People v. Beagle* (1972) 6 Cal.3d 441, 457, 99 Cal.Rptr. 313, 492 P.2d 1.)

Thus, contrary to Welton's assertion, Dr. Babrauskas was allowed to testify as to the cause-and-origin of the fire. Dr. Babrauskas rebutted much of the scientific testimony offered by the State's fire investigators, Section II(A)(1), *supra*, and ultimately testified that the cause-and-origin of the fire was undeterminable based on the available evidence, and that the State's fire investigators had relied on junk science in determining that the fire was caused by arson. (*See id*. at 3775, 3926-27).

Moreover, Dr. Babrauskas, a professor and published author, was an eminent expert in the field of fire science, having created a notable invention for measuring the burning of furniture, and developing the first computer program for modeling fires in the United States. (*Id*. at 3723-29).

In light of the "heavy measure of deference" a court must give to defense counsel's choice of expert under *Strickland*, *Turner*, 281 F.3d at 876, this Court is unable to find that the trial attorneys' choice to call Dr. Babrauskas as their only expert regarding the fire's cause and origin was ineffective under *Strickland*, or that Smith was ineffective for failing to allege the ineffectiveness of trial counsel. As a result, the Court cannot conclude that there is good cause for Welton's failure to exhaust under the three-part test in *Rhines*.

Although there is no indication in the record that Welton has engaged in intentional dilatory tactics, the Court finds that Welton is ineligible for a *Rhines* stay in the absence of good cause. This Court however declines to rule on whether the claim that her trial counsel were ineffective for failing to consult an expert on the cause-and-origin of fires is "plainly meritless" under *Rhines*, which requires a

court to find that "it is perfectly clear that the petitioner has no hope of prevailing." *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017).

Indeed, this Court is deeply troubled by Welton's assertion—made in her appeal to the Alaska Court of Appeals of the Superior Court's dismissal of her second post-conviction petition—that newly accepted standards in forensic fire science has rendered the testimony of the State's fire experts false. (*See* Doc. 29-25 at 50-53). That issue was raised before the Court of Appeals for the first time in the pending second state petition for postconviction relief. Oral argument was held on March 1, 2017 and is ripe for decision by the Court of Appeals. However, at this time, that claim has not been raised before this Court, and remains unexhausted pending the Alaska Court of Appeals' ruling.

### C. Because Welton Is Ineligible for a *Rhines* Stay, Welton's Petition Must Be Dismissed without Prejudice under *Rose v. Lundy* unless She Chooses to Delete Her Second Claim

Under the total exhaustion rule established in *Rose v. Lundy*, 455 U.S. 509, 522 (1982), a federal habeas petition must be dismissed if it contains any unexhausted claims unless the petitioner qualifies for a stay under *Rhines v. Weber*. *See* Section III(B), *supra*. However, before dismissal, the District Court must give the petitioner the opportunity to delete her unexhausted claims and proceed on any fully exhausted claims. *Dixon v. Baker*, 847 F.3d 714, 719 (9th Cir. 2017).

In this regard, Welton must be warned that, if she chooses to delete her second claim and proceed on the first, she will likely not be permitted to reassert

her second claim in a third federal habeas petition. *Burton v. Stewart*, 549 U.S. 147, 154 (2007).

A dismissal of the entire petition by the Court would be without prejudice. *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); *Slack v. McDaniel*, 529 U.S. 473, 488-89 (2000). Although AEDPA's one-year statute of limitations is tolled so long as Welton remains in state court, 28 U.S.C. § 2244(d)(2),[14] the Court must warn Welton that, if the instant petition is dismissed, AEDPA's clock will begin to run at the conclusion of her second state post-conviction case. *Cf. Valerio v. Crawford*, 306 F.3d 742, 771 (9th Cir. 2002) (ordering the district court to warn the petitioner that opting for dismissal would, in his case, result in the expiration of AEDPA's statute of limitations).

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court DENY Welton's Motion to Stay and Abey (Doc. 28).

The Court further recommends that the District Court give Welton two weeks to decide whether to delete her second, unexhausted claim (Claim 2), and litigate the first claim (Claim 1). Should Welton decline to delete her second claim, the Court recommends that the District Court GRANT the State's Motion to Dismiss (Doc. 29), and dismiss the pending petition (Doc. 27) without prejudice.

---

[14] Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

DATED this <u>4th</u> day of September, 2017, at Anchorage, Alaska.

/s/ Deborah M. Smith
Chief United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than CLOSE OF BUSINESS, **September 11, 2017.**  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  *Miranda v. Anchondo, et al.,* 684 F.3d 844 (9th Cir. 2012).  A district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.  *United States v. Howell,* 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before CLOSE OF BUSINESS, **September 18, 2017**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  *See Hilliard v. Kincheloe,* 796 F.2d 308 (9th Cir. 1986).